**Betty Ann LACY, Plaintiff-Appellant,**

v.

**GENERAL FINANCE CORPORATION, Defendant-Appellee.**

No. 80–7213.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 27, 1981.

Joseph H. King, Jr., Atlanta, Ga., for plaintiff-appellant.

Lewis N. Jones, Atlanta, Ga., for defendant-appellee.

Before HILL and FRANK M. JOHNSON, Jr., Circuit Judges, and SCOTT *, District Judge.

JAMES C. HILL, Circuit Judge:

Betty Ann Lacy bought a used car. General Finance Corporation agreed to lend her the balance of the purchase price. This mundane transaction has effected considerable litigation. First, Lacy sued General Finance, alleging that the creditor had violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA). Eventually she prevailed, and General Finance no longer challenges her entitlement to damages. In the interim, however, Lacy also defaulted on the underlying loan. General Finance repossessed and sold the car, but the proceeds from the sale were insufficient to satisfy the remaining debt. So General Finance, while defending against Lacy's TILA claims, bought a compulsory counterclaim for the balance of the loan. A jury returned a verdict favorable to General Finance on the counterclaim. Lacy appeals and asks this court to consider three issues. We disagree with all of her contentions.

I.

First, Lacy argues that General Finance is not entitled to recover any of the deficiency between the sale price of the car and the unpaid balance of the loan because

---

* District Judge of the Middle District of Florida, sitting by designation.

it failed to reasonably notify her of the impending sale of the car. Georgia law governs our disposition of this argument. The Georgia commercial code permits a secured creditor to dispose of the collateral if the debtor defaults, but before the creditor can pursue a deficiency balance it must reasonably notify the debtor "of the time and place of any public sale or . . . of the time after which any private sale or other intended disposition is to be made . . . ." Ga.Code § 109A–9–504(1), (3). The code itself does not tell us what sort of notification is reasonable; Georgia case law emphasizes that a creditor must perform in good faith its obligations in disposing of the collateral. *See Geohagan v. Commercial Credit Corp.*, 130 Ga.App. 828, 204 S.E.2d 784 (1974).

██ Because the thing financed here is a car, the provisions of Georgia's Motor Vehicle Sales Finance Act are also relevant. That Act provides, in part:

> When any motor vehicle has been repossessed after default . . ., the seller or holder shall not be entitled to recover a deficiency . . . unless within 10 days after said repossession he forwards by registered or certified mail to the address of the buyer shown on the contract, or later designated by said buyer, a notice of the seller's or holder's intention to pursue a deficiency claim against said buyer.

Ga.Code § 96–1007.

The record here reveals that General Finance complied with the requirements of the Motor Vehicle Sales Finance Act. It sent the statutorily required notification via certified mail to the address she provided in the finance contract. The post office returned the notification undelivered and marked "MOVED, LEFT NO ADDRESS." Lacy had not designated a forwarding address in the finance contract. General Finance made no other attempt to locate and notify Lacy. General Finance was able to locate the collateral at another address, however, and Lacy contends that even though nothing suggests that she could have been reached at that address General Finance ought to have sent notification to her there.

██ We disagree. We think that § 96–1007 complements § 109A–9–504 and provides some guidance as to what constitutes reasonable notice in this case. Although we hesitate to dictate that Georgia law mandates that compliance with the requirements of § 96–1007 is enough to satisfy the requirements of § 109A–9–504 in every instance, we are convinced that the jury had good reason to decide that General Finance reasonably notified Lacy of the impending sale of the car. Under facts of this case, we see no reason to reject the judgment of the jury.

## II.

██ Second, Lacy suggests that she should recover from General Finance the attorney's fees she incurred in defending against its counterclaim. We recently considered this very suggestion and, as an evenly divided en banc court, we affirmed a district court's holding which denied a TILA plaintiff's "recovery of attorney's fees for time spent in defending the compulsory counterclaim . . . ." *Lawrence v. Credithrift of America, Inc.*, 644 F.2d 506 (1981). An affirmance by an evenly divided court, however, has no precedential value, *see generally Hertz v. Woodman*, 218 U.S. 205, 213–14, 30 S.Ct. 621, 622–23, 54 L.Ed. 101 (1910), so we are required to explain here why we think Lacy should not recover the attorney's fees chargeable to her defense against the counterclaim.

██ Lacy premises her suggestion on 15 U.S.C. § 1640, which provides in pertinent part:

> (a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person in an amount equal to the sum of—
>
> > (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

*See also id.* § 1692k(a)(3). She argues that "the costs of the action" include the costs of defending against General Finance's counterclaim and thus that she, as a successful TILA plaintiff, is entitled to those costs. She misreads the statute. It plainly provides that attorney's fees may be awarded if they are incurred "to enforce the foregoing liability." "Foregoing liability" refers to the claims established by TILA; a plaintiff is not enforcing a TILA liability when he or she is defending against a state law debt claim.

Congress, by enacting TILA, created a new claim for failure to disclose certain terms associated with the extension of credit. A borrower may properly and successfully pursue a TILA claim even though he has defaulted on the underlying debt. The voluntary release of the debtor by the creditor does not extinguish the TILA claim. Proof of liability for the underlying debt is no defense to the TILA claim. The TILA claim may be won or lost regardless of the outcome of a claim for the underlying debt; likewise, a claim for the underlying debt may be won or lost regardless of the outcome of the TILA claim. When Congress enacted TILA, it added nothing to the rights of the parties vis-a-vis the indebtedness created by the credit transaction. Congress did provide that the successful TILA claimant could recover attorney's fees incurred in prosecuting it. It did not provide attorney's fees for parties to any other claim or controversy.

Undeniably, a TILA claim and a state law debt claim which concern the same loan are related. Both claims arise from one transaction. This relationship renders General Finance's claim on the underlying loan a compulsory counterclaim. *See Plant v. Blazer Financial Services Inc. of Georgia,* 598 F.2d 1357 (5th Cir. 1979). This relationship, however, does not transform the debt action into a TILA action.

Our interpretation of the statute is buttressed by the "American Rule" concerning the recovery of attorney's fees: "the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). There are, of course, exceptions to this general rule, but Congress has not

> extended any roving authority to the judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted. What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.

*Id.* at 260, 95 S.Ct. at 1623. In enacting TILA, Congress clearly created an exception to this "American Rule," no doubt in order to encourage those with valid TILA claims to pursue them. In no way, however, did Congress specifically and explicitly provide for the allowance of attorney's fees incurred in the defense against a claim which did not arise under TILA.

Accordingly, Lacy is not entitled to recover from General Finance any attorney's fees which were charged for time spent in defending against the company's counterclaim.

### III.

Third, Lacy contends that the attorney's fees she properly recovered, that is, those incurred in the pursuit of her valid TILA claim, should be enhanced by one-third because of the contingent nature of the recovery. We recognize that the contingent nature of a fee is one factor to consider when evaluating the adequacy of an attorney's fee award. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974). We nevertheless believe that the amount awarded here is appropriate.

Thus the disposition of this case by the district court is

AFFIRMED.