Nick ROLLINS and Burtreas McGowan
Rollins, Plaintiffs-Appellants,

v.

Ralph D. DWYER, Jr., et al.,
Defendants-Appellees.

No. 80–3875.

United States Court of Appeals,
Fifth Circuit.

Jan. 21, 1982.

Matthews & Breeden, Patrick D. Breeden, Donald Juneau, Brian J. Waid, New Orleans, La., for plaintiffs-appellants.

Many, LoCoco & Dwyer, Ralph D. Dwyer, Jr., New Orleans, La., for defendants-appellees.

Before POLITZ and RANDALL, Circuit Judges, and PARKER *, District Judge.

JOHN V. PARKER, Chief Judge:

This case has its genesis in a home repair loan contract entered into by plaintiffs and defendant, United Credit Plan of Chalmette, Inc. ("United Credit") on February 20, 1973. The transaction has been rescinded under the provisions of 15 U.S.C. § 1601 *et seq.*, the Truth-in-Lending Act ("TIL"), and the sole issue remaining is whether principles of res judicata preclude an award in favor of plaintiffs for attorney fees. The District Court sustained defendant's plea of res judicata and dismissed the action. Finding that the precise claim made here was submitted to and rejected by the state courts, we affirm.

## PRIOR PROCEEDINGS

Upon solicitation by defendant Mark Sackett, d/b/a Tulane Building Materials ("Sackett"), plaintiffs Nick and Burtreas McGowan Rollins ("Rollins") entered a home improvement loan, dated February 20, 1973, with defendant, United Credit. Rollins executed a promissory note secured by a mortgage upon their home, located in St. Tammany Parish, Louisiana, and further secured by a chattel mortgage covering specified movable property. Upon Sackett's request, United Credit disbursed the proceeds of the loan to him, although the work was not properly done. The State court found as a fact that Sackett and United Credit were working together in arranging credit for Rollins.

On July 1, 1974, United Credit filed suit upon the note in the 22nd Judicial District Court for the Parish of St. Tammany, praying for judgment against Rollins for the balance due upon the note and for recognition of the mortgage and chattel mortgage. On August 15, 1974, Rollins filed an answer and reconventional demand against United Credit and a third party demand against Sackett. Rollins denied the indebtedness, alleged that United Credit failed to comply with the disclosure requirements of the Truth-in-Lending Act, "15 U.S.C.A. Section 1601 et seq.," pleaded non-disclosure as an affirmative defense, demanded damages and attorney fees for such non-disclosure, pleaded failure of consideration and fraudulent misrepresentation as affirmative defenses and, adopting the affirmative defenses by reference, asserted a purported class action by reconventional demand against United Credit and Sackett.

In response to the pleadings filed on behalf of Rollins, United Credit filed, inter alia, a peremptory exception of prescription, pleading the one year limitation period[1] established by 15 U.S.C. § 1640(e) for bringing actions for violation of the disclosure provisions of that section.

On March 13, 1975, judgment was signed by the state court maintaining all peremptory exceptions filed on behalf of United Credit and dismissing the reconventional demand.[2]

That judgment disposed of the claims for damages and attorney fees adversely to Rollins, at least insofar as any such claim arose out of the violation by United Credit of the disclosure requirements of 15 U.S.C.

---

* Chief Judge, of the Middle District of Louisiana, sitting by designation.

1. Section 1640(e) provides:
   "Any action under this section may be brought in any United States District Court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

2. Under Article 1005, La. C.C.P., the defendant is required to "set forth affirmatively" any matter constituting an affirmative defense. A reconventional demand is an incidental action in which the defendant may assert "any action

which he may have against the plaintiff." Article 1061, La. C.C.P. Article 1005 specifically provides, ... "If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation." Although the pleadings are not very precise, it is clear that the "TIL" claims were considered by the state court as part of the reconventional demand.

§ 1640(a)[3] because these claims were not filed within one year of February 20, 1973, the date of the transaction. No appeal was taken from that judgment and it became final under Louisiana law.

On July 7, 1975, Rollins exercised the statutory right conferred by 15 U.S.C. § 1635 to rescind the transaction with United Credit and a rescission notice to that effect was delivered. United Credit ignored the notice and on July 14, 1975, this action was instituted in federal district court by Rollins. This action is predicated upon the rescission of the transaction and United Credit's failure to perform the duties imposed upon it by 15 U.S.C. § 1635[4]

---

**3.** Section 1640 has been frequently amended since it was originally adopted in 1968. Prior to its amendment by PL 93–495, effective October 28, 1974, subsection (a) read, in pertinent part, as follows:

"(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) Twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) In the case of any successful action to enforce the foregoing liability, the cost of the action together with a reasonable attorney's fee as determined by the Court."

The 1974 amendment changed subsection (a) so as to read in pertinent part:

"Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . of this sub-chapter with respect to any person is liable to such person in an amount equal to the sum of

(1) Any actual damage sustained by such person as a result of the failure;

(2) (A)(i) In the case of an individual action twice the amount of any finance charge in connection with the transaction . . . except that the liability under this sub-paragraph shall not be less than $100 nor greater than $1,000 . . . and

(3) In the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the Court."

This Court has held that the Congress intended the 1974 amendments to apply to all actions then pending, even those on appeal. *Gerasta v. Hibernia National Bank*, 575 F.2d 580 (5th Cir. 1978).

Section 1640 was amended twice in 1976. However, both PL 94–224 and PL 94–241 amended provisions which have no application to the facts of this case. PL 96–221, adopted March 31, 1980, again amended § 1640, effective March 31, 1982.

**4.** Section 1635, subsections (a) and (b), as amended by the 1974 Amendments reads as follows:

"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section, the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to recind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."

: to refund all payments made by the debtor and to take the necessary action to cancel the mortgages. The federal action claims rescission by reason of the notice and claims damages and attorney's fees by reason of United Credit's failure to take the mandated action. The action was stayed by the district court because of the pendency of the state court proceedings.

On February 25, 1977, Rollins filed a "Second Supplemental and Amended Answer" in the state court proceedings. In that pleading, Rollins asserted "as a defense" specific violations of the disclosure provisions of § 1640 and demanded "rescission and cancellation of the loan obligation." Rollins also pleaded the July 7, 1975, rescission notice and alleged that United Credit had failed to cancel the mortgages and to refund payments. The pleading also alleged violations of Louisiana state law. Rollins specifically prayed that the court" ... cancel the home solicitation sale, cancel the mortgages on defendants [sic] property, *award reasonable attorney's fees* and dismiss plaintiff's suit..." (emphasis supplied).

The case went to trial in state court and the attorneys for Rollins each submitted an affidavit detailing the time spent on the case. On June 29, 1978, the state court handed down reasons for judgment, holding that the July 7, 1975 rescission notice was timely and effective and that the Rollins were entitled to judgment rescinding the loan transaction, cancelling any security interest obtained by United Credit and ordering United Credit to refund all payments, finance charges, interest and penalties paid. Because United Credit had failed to comply with its duties under § 1635(b) after receipt of the rescission notice, the Court held that the obligors were not required to tender the loan proceeds [5] to United Credit. No attorney's fees were awarded.

Neither the trial court's reasons for judgment nor the judgment itself, dated September 7, 1978, made any reference to attorney's fees.

Rollins appealed the issue of attorney's fees to the Louisiana Court of Appeal for the First Circuit which, in an unreported opinion, held that attorney's fees could not be awarded because no appeal had been taken from the March 13, 1975 judgment. The appeal was dismissed. Rollins then applied for certiorari to the Supreme Court of Louisiana, which denied the application without opinion. *United Credit Plan of Chalmette, Inc. v. Rollins*, 376 So.2d 1267 (La.1979).

Rollins then returned to the previously stayed federal court action, seeking only attorney's fees. The District Court sustained United Credit's plea of res judicata as to the state court proceedings and this appeal followed.

I.

A state court judgment commands the same res judicata effect from the federal court as it would have in the court that rendered it, without regard to whether the state court applied state or federal law. 28 U.S.C. § 1738; *St. John v. Wisconsin Employment Relations Board*, 340 U.S. 411, 71 S.Ct. 375, 95 L.Ed. 386 (1951). Thus, we apply Louisiana principles of res judicata. Section 1738 requires federal or state courts to give to a state court judgment only the same effect that it would be given in the court in which it was rendered. *State ex rel. Huhn v. Huhn*, 224 La. 591, 70 So.2d 391 (La.1954); *Government Personal Mutual Life Insurance Co. v. Kaye*, 584 F.2d 738 (5th Cir. 1978). Therefore, the issue raised is whether the prior state court action bars this Court from considering the issue of attorney's fees. The Louisiana concept of res judicata is more narrow than that of the analogous common law generally applied in other states. Article 2286 of the Louisiana Revised Civil Code provides:

---

**5.** The state court cited this Court's decision in *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974) as authority for relieving the obligors of the obligation of tendering the loan proceeds. In view of *Gerasta v. Hibernia National Bank*, 575 F.2d 580 (5th Cir. 1978), the correctness of this ruling is doubtful, at best. See particularly page 584, f.n. 3, but that matter is not before us.

"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded upon the same cause of action; the demand must be between the same parties and formed by them against each other in the same quality."

In *Mitchell v. Bertola*, 340 So.2d 287 (La. 1976), the Supreme Court of Louisiana points out that the phrase "cause of action" in Article 2286 is a mistranslation from the original French and that the correct translation is, "the demand must be founded on the same *cause*..." The "cause" is the juridical or material fact which is the basis of the right claimed or the defense pleaded. Thus, in *Mitchell v. Bertola*, the court held that a prior adverse judgment in a suit to nullify an option contract for nonpayment of rent and for lesion beyond moiety[6] did not bar a subsequent suit against the same party to nullify the same contract upon the grounds of fraud and lack of consideration. The court reasoned that the "cause" of the first action was not identical to that of the second. *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154 (La.1978); Dixon, Booksh, Zimmering, *Res Judicata in Louisiana Since Hope v. Madison*, 51 Tul.L.Rev. 611 (1977); Comment, *Preclusion Devices in Louisiana: Collateral Estoppel*, 35 La.L.Rev. 158 (1974); Comment, *The Louisiana Concept of Res Judicata*, 34 La.L.Rev. 763 (1974). The authority of the thing adjudged occurs only where there is identity of the parties, the cause and the thing demanded.

Plaintiffs attempt to avoid res judicata by the following reasoning. They concede that the March 13, 1975 judgment dismissing the reconventional demand is final and adversely disposed of their claim for attorney's fees relating to their action for disclosure violations under § 1640. They advance the notion, however, that the present claim for attorney's fees relate to their rescission claim under § 1635. They assert that this claim for attorney's fees is not grounded

upon the same "cause" and because § 1635, as amended, provides a three year period for filing suit, this claim is timely filed and is not barred by the prior judgment. Finally, plaintiffs admit that they raised the same issue of rescission in state court, predicated upon the same disclosure violations which constitute the grounds for the § 1640 claim, but argue that the attorney's fees claim is not barred by the September 7, 1978 judgment because the rescission issue was presented only in defense and procedurally the state court could not grant affirmative relief, such as attorney's fees, to them.

## II.

Interestingly, *Gerasta v. Hibernia National Bank*, 575 F.2d 580 (5th Cir. 1978), provides support of sorts for plaintiffs' argument that denial of attorney's fees in an action for violation of the disclosure provisions of § 1640 does not preclude recovery of attorney's fees in a subsequent action for failure of the creditor to comply with the rescission for requirements of § 1635, even though rescission is predicated upon the same disclosure violations. This Court there observed that § 1635 was intended to operate without judicial intervention in that, when the debtor delivers a notice of rescission, the creditor is supposed to cancel security interests and to refund payments. Noting that § 1635 does not specifically provide a remedy for the situation where the creditor fails to take any action upon receipt of a rescission notice, this Court held that § 1640(a), as amended in 1974, provides a remedy for noncompliance with "any requirement" imposed by certain provisions of the Act, including § 1635. This Court then commented:

"Section 1635 and § 1640 are not mutually exclusive remedies; a consumer may be entitled to both rescission pursuant to § 1635 and damages pursuant to § 1640..." (citation omitted.) (575 F.2d at 583).

---

6. Lesion beyond moiety is another doctrine peculiar to the civil law and it protects one who does not receive a full equivalent for what he gives in a commutative contract. In sales of immovable property, the vendor may invalidate the sale if the price given is less than one-half the value of the thing sold. La.Civ.Code art. 1861.

■ Thus, had plaintiff raised only the disclosure violations of § 1640 in the state court, Louisiana res judicata law might not preclude them from asserting attorney's fees for violations of § 1635 here. Plaintiffs' theory falls, however, because the facts are to the contrary. Neither are we persuaded by the procedural argument that the Louisiana courts did not pass upon the present claim for attorney's fees because rescission was pleaded "only as a defense," and not as a reconventional demand.[7]

### III.

■ Applying Louisiana principles of res judicata in the most narrow fashion, it is plain that plaintiffs here are seeking to relitigate the same claim for attorney's fees against the same party upon the identical cause. Contrary to plaintiff's argument, the record shows that the claim for attorney's fees upon the same "cause" was presented to the state courts.

Although neither the district court nor the Court of Appeal specifically discussed the issue of awarding attorney's fees for violation of the rescission provisions of § 1635, Louisiana jurisprudence is clear that all issues presented by the pleadings and on which evidence was offered will be regarded as disposed of by a final judgment. Demands that are passed over in silence are considered as rejected.[8] *See R. G. Claitor's*

---

7. Because of the view of the case which we take, we do not consider the question of whether plaintiffs are breaching Louisiana's prohibition against "splitting causes of action." La. Code Civ.P. art. 425; *Quarls v. Lewis*, 226 La. 76, 75 So.2d 14 (1954). This article would present a serious obstacle to the course chosen by plaintiffs. It basically provides that a litigant "cannot divide an obligation due him for the purpose of bringing separate actions on different portions thereof." Thus, a litigant is required to make all claims for damage in one proceeding. Failure to do so constitutes waiver. *See Parish v. Bill Watson Ford, Inc.*, 354 So.2d 727 (La.App. 4th Cir. 1978), *writ den.*, 356 So.2d 1005 (La.1978), holding that plaintiff could not assert, in a second action against defendant, damage claims not asserted in the first action.

8. Louisiana jurisprudence is not entirely consistent in treating the three different concepts referred to in this opinion, *viz.*, res judicata, splitting causes of action, and issues presented but not specifically referred to in judgments. For example, see *Quarles v. Lewis*, 226 La. 76, 75 So.2d 14 (1954), where the Louisiana Supreme Court reviewed its opinion in *Norton v. Crescent City Ice Mfg. Co.*, 178 La. 150, 150 So. 859 (1933) pointing out that the result in *Norton* was correct, but for the wrong reasons. *Norton* held that a second wrongful death action by a surviving child for injury sustained by the deceased before death was barred by the res judicata effect of an earlier action for damages sustained by the child by reason of the death of the parent. *Quarles* held that the first action was not res judicata because there was no identity of the thing demanded, but that it constituted splitting the cause of action and the second action was barred for that reason.

*Sewell v. Argonaut Southwest Ins. Co.*, 362 So.2d 758 (La.1978) involved a workmen's compensation claim. In the first action, the employee was awarded compensation benefits but the judgment was silent as to medical expenses. The second action was for recovery of medical expenses incurred prior to trial of the original action. The district court overruled the employer's plea of res judicata and entered judgment for plaintiff. The Court of Appeal reversed, commenting that, although no specific evidence of medical expenses was offered, "[I]t was obvious from the record that plaintiff had received rather extensive medical treatment...." 355 So.2d 585, 588 (La.App. 3rd Cir. 1978). Thus, the first judgment barred the subsequent claim although it was silent on the question of medical expenses. The Supreme Court, obviously straining to protect a compensation claimant, recognized the validity of the rule that issues presented for resolution are disposed of adversely where the judgment is silent, but held that no evidence was actually offered on medical expenses. Thus, the injured worker recovered those expenses in the second action.

We suggest that *Sewell* presents a proper case for application of La.Code Civ.P. art. 425, rather than res judicata analysis. Without regard to whether there was identity of parties, "cause" and the thing demanded, and without regard to whether evidence was actually offered on medical expenses, it certainly appears that the worker was dividing the obligation due him into two portions for the purpose of bringing separate actions. The provisions of Article 425 were apparently not called to the Court's attention, for it is not mentioned in either the Court of Appeal or the Supreme Court opinion. *Star Electric Supply, Inc. v. Fidelity and Deposit Co. of Md.*, 354 So.2d 647 (La.App. 1st Cir. 1977), *writ den.*, 356 So.2d 1011 (La.1978) is another example of a case in which Article 425 seemingly applies but the Court resolves the matter on other grounds. Other examples are available.

*Realty v. Juban*, 391 So.2d 394 (La.1980); *Villars v. Faivre*, 36 La.Ann. 398 (1884).

### IV.

As to the procedural issue raised by plaintiffs, we have already noted that Article 1005 of the Louisiana Code of Civil Procedure provides that the misdesignation of a reconventional demand as an affirmative defense does not limit the relief that a party may obtain. Moreover, we note that plaintiffs obtained affirmative relief under the § 1635 rescission claims. Judgment was rendered in favor of plaintiffs, (1) rescinding the loan transaction and cancelling the mortgages, (2) ordering United Credit to return to plaintiffs (a) all payments made on the transaction and (b) all finance charges, interest and penalties paid and (3) ordering United Credit to pay all costs of court.

Plaintiffs specifically prayed for attorney's fees in the same pleading in which they alleged rescission under § 1635 and they submitted evidence to the court in the form of affidavits as to the amount which should be awarded. Copies of all briefs filed in the district court and the Court of Appeal are in the record filed in this Court and these briefs show that Rollins repeatedly took the position that the § 1635 claims were contained in a reconventional demand and that they were entitled to all relief, including attorney's fees.

The issue of attorney's fees was specifically included in the post-trial brief filed on behalf of Rollins in the district court (See particularly page 12) and was reurged in their reply brief. (page 2)

The only issue appealed in state court was that of attorney's fees. While the Court of Appeal held that this issue was precluded by the district court's judgment of March 13, 1975, and did not discuss the issue of attorney's fees for violations of § 1635, it is plain that Rollins argued the same juridical predicate to that court as is here presented. The original brief filed in the Court of Appeal urges that, "a party prevailing in an action for rescission under § 125 of the Truth-in-Lending Act, 15 U.S.C. § 1635 is entitled to reasonable attorney's fees . . ." (page 1) Plaintiffs spell out in detail this "cause" even more specifically in their application for rehearing to the Court of Appeal:

> "The Rollins' reconventional demand for a rescission [9] was timely filed within three years of the date of the original credit transaction and since United did not do those things required of it by 15 U.S.C.A. 1635 within ten days of the receipt of the letter of rescission, the federal Consumer Credit Protection Act creates a new cause of action under 15 U.S.C.A. 1640 which includes a right of action for a reasonable legal fee."

Plaintiffs then argue that the Court of Appeal confused the cause of action arising for non-disclosure under § 1640 with the rescission cause of action [10] arising under § 1635 and that they were entitled to attor-

---

It should be noted that, even under the reasoning of *Sewell*, supra, plaintiffs' claim for attorney's fees here is barred because the record clearly establishes that they prayed for attorney's fees in their rescission claim and offered evidence thereon. The issue was submitted to the state district court and the silence of the judgment on that issue is a rejection of the claim. See discussion in text, infra.

**9.** This is only one of the many instances where plaintiffs, in brief, took the position that their claims against United Credit for failing to comply with § 1635 amounted to an action against United Credit and thus a "reconventional demand." Plaintiffs, here, of course, insist that despite their representations to the state court, there was no such reconventional demand and that the claims were "purely defensive." If we accept the argument of plaintiffs that their rescission claims under TIL's § 1635 were strictly in defense of a state law claim for the balance due on the note, that would raise an additional issue i.e., whether this Court's holdings in *Lacy v. Gen. Fin. Corp.*, 651 F.2d 1026 (5th Cir. 1981), and *McDonald v. Credithrift of America, Inc.*, 661 F.2d 69 (5th Cir. 1981), would preclude any award for attorney's fees. Would a TIL defense to a state law claim constitute an action to "enforce liability" under TIL? We reserve that issue for a future case.

**10.** Although plaintiffs couch their argument in terms of "cause of action" the concept is actually one of "cause," as we have seen. *Mitchell v. Bertolla*, 340 So.2d 287 (La.1976).

ney's fees because the 1635 action was timely filed. It is apparent that the Louisiana Court of Appeal rejected the argument because it denied the application for rehearing.

The record in this case establishes that plaintiffs presented exactly the same claim for attorney's fees in the state court action as that which they now urge upon this Court. The parties are identical and even under Louisiana's restricted view of res judicata, the state court judgment precludes relitigation of the same issues. In effect, plaintiffs' argument is that the state court judgment is in error in declining to award attorney's fees as part of the rescission claim under § 1635. Under res judicata principles, we do not review state court judgments for error; we look only to finality. The state court judgment here is final and res judicata and the district court correctly so held.

AFFIRMED.