[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16115

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 9, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-22225-CV-PAS

OSCAR PEREZ,
FRANCISCO RENGIFO,
JOHN HUMPHREYS,
JUAN ALBA,
WILHELM PERIERA,
ED MAZZEO,

Plaintiffs-Counter-
Defendants-Appellants,

MIOMIR MAKSIMCEV,
GEORGE POWELL,

Plaintiffs-Appellants,

DIMITRE KARABOYTCHEV, et al.,

Plaintiffs,

LAW FIRM OF GLASSER, BORETH & KLEPPIN, P.A.,

Interested Party-Appellant,

versus

CAREY INTERNATIONAL, INC.,
a Delaware corporation qualified to
do business in the State of Florida,
CAREY LIMOUSINE FLORIDA, INC.,
a Delaware corporation qualified to
do business in Florida,

Defendants-Counter-
Claimants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 9, 2010)

Before O'CONNOR,[*] Associate Justice Retired, CARNES and ANDERSON,
Circuit Judges.

PER CURIAM:

This appeal is about attorney's fees and costs in a retaliation lawsuit brought

under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.  A court-appointed

special master helped the parties settle the lawsuit, and the parties agreed to have

him consider the plaintiffs' motion for attorney's fees and costs as if he were a

magistrate judge.  Plaintiffs' counsel requested $204,525 in fees.  The special

master issued a report and recommendation that the plaintiffs' attorneys should be

---

[*]Honorable Sandra Day O'Connor, Associate Justice (Retired) of the United States
Supreme Court, sitting by designation.

awarded a total of $94,080 in fees and $9,342.43 in costs. Those amounts reflected a reduction in the compensable hours and the hourly rates of the lawyers and a reduction in the amount of costs requested.

While the special master's report was being considered by the district court, plaintiffs' counsel moved to put into the record a transcript of a session that the parties had with the special master on August 21, 2007. The district court denied that motion after finding that the transcript was a record of confidential settlement negotiations.

The district court adopted the special master's report and recommendation in its entirety, except that the court lowered the recommended amount of attorney's fees by $2,397.50. Eight of the plaintiffs and the law firm of Glasser, Boreth & Kleppin, P.A. have appealed the district court's fees and costs judgment.

I.

"We . . . review the district court's award of attorneys' fees and costs for abuse of discretion, revisiting questions of law de novo and reviewing subsidiary findings of fact for clear error." Atlanta J. & Const. v. City of Atlanta Dep't of Aviation, 442 F.3d 1283, 1287 (11th Cir. 2006). "In reviewing the district court's hourly rate determination, an appellate court must be mindful that, although an attorney fees award is reviewed for abuse of discretion, the determination of what

constitutes a reasonabl[e] hourly rate is a finding of fact subsidiary to the total

award and is therefore reviewed under the clearly erroneous standard." ACLU of

Ga. v. Barnes, 168 F.3d 423, 436 (11th Cir. 1999) (quotation marks and alteration

omitted).

## II.

The plaintiffs contend that the district court abused its discretion by finding

that attorney Harry O. Boreth was not entitled to any fees. They also contend that

the court should not have reduced Chris Kleppin's and Lloyd Glasser's hourly

rates and the number of hours that they claimed. The plaintiffs also challenge the

district court's refusal to tax as costs the special master's fees and the costs

associated with two depositions taken by plaintiffs' counsel. Finally, they contend

that the district court abused its discretion by finding that the transcript of the

parties' session with the special master on Aug. 21, 2007, was an inadmissible

record of confidential settlement negotiations.[1] We will address each of those

contentions in turn.

## A.

The plaintiffs sought $17,820 in fees for 39.6 hours of work done by

---

[1]We reject the plaintiffs' argument that the special master erred by failing to hold a fee hearing. When determining reasonable attorney's fees, "[o]ccasionally, evidentiary hearings are necessary." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). Not always, but only occasionally. See id. This was not one of those occasions.

attorney Boreth at an hourly rate of $450. The district court awarded nothing. Conducting a lodestar analysis, the court found that all of Boreth's time "duplicate[d] the work performed by Attorneys Kleppin and Glasser," which led it to conclude that none of Boreth's time was reasonably expended on the litigation. (R.4-146 at 3.) The court reinforced that conclusion with its finding that the quality of Kleppin's work did not reflect guidance from a senior attorney. (See id.)

The plaintiffs assert that district court should have counted Boreth's work on the following tasks: (1) reviewing and signing the scheduling report; (2) reviewing the scheduling order and ensuring that the dates were properly calendared and scheduled; (3) drafting proposed settlement agreements and an ADEA addendum; (4) working all day at mediation on July 27 with law partners Glasser and Kleppin. The plaintiffs argue that Boreth's presence was required at the mediation because there were many clients who had different demands, offers, and responses to offers. They assert that the district court erred by concluding that none of Boreth's time was compensable. Their position is that because they were the prevailing party in the litigation, and Boreth was one of their attorneys, they should be awarded a lodestar amount of fees for his legal work on their behalf.

The lodestar is calculated using "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" <u>Kenny A. ex rel. Winn v.</u>

Perdue, 532 F.3d 1209, 1219 (11th Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)), cert. granted, 129 S. Ct. 1907 (2009). The lodestar is "'the guiding light of our fee-shifting jurisprudence.'" Id. (quoting City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641 (1992)). Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended. Hensley, 461 U.S. at 434, 103 S. Ct. at 1939–40. Even when a party prevails, the district court still must determine whether time was reasonably expended, and if it was not, that time should be excluded from the fee calculation. See id.

In the present case the district court properly conducted a lodestar analysis and did not err in its application of the law to the calculation of Boreth's compensable fees. Because the record supports the district court's finding that the time expended by Boreth was redundant, excessive, or otherwise unnecessary, the court did not abuse its discretion by concluding that none of Boreth's time was compensable.

B.

The plaintiffs sought $15,660 in fees for attorney Glasser based on 34.8 hours of work at an hourly rate of $450. The special master recommended reducing Glasser's hourly rate to $350 and his compensable hours to 29.1 for a

6

total fee of $10,185. The special master found that $350 an hour was a reasonable rate for Glasser because of the "nature of the work performed by Mr. Glasser, his background and experience, and his limited participation in this lawsuit." (R.4-131 at 13.) The district court adopted those findings. The plaintiffs contend that the district court should have calculated the lodestar for Glasser using an hourly rate of $450 because that is Glasser's usual rate, and the record contains no basis for reducing it.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). Although "limited participation" is not a proper basis for reducing an attorney's hourly rate, the "nature of the work" and the "background and experience" of the attorney are proper considerations. We cannot conclude that the district court clearly erred by considering those factors and setting Glasser's hourly rate at $350.

In calculating Glasser's number of compensable hours, the district court acted within its discretion. The court adopted the special master's findings that set out the precise time entries by Glasser that were disallowed, resulting in a reduction of compensable hours. All of the disallowed time involved consultations

7

between multiple partners or one partner's review of another one's work. Based on those findings, the district court's decision that the hours it disallowed were duplicative or unnecessary did not amount to an abuse of discretion. See Hensley, 461 U.S. at 434, 103 S. Ct. at 1939–40.

C.

1.

The plaintiffs contend that the district court erred when it set attorney Kleppin's hourly rate at $175. In their sessions with the special master, the plaintiffs did not submit expert fee affidavits because the master planned to set the hourly rate as it was determined by the district court in a related case, Powell v. Carey International, Inc., 547 F. Supp. 2d 1281 (S.D. Fla. 2008).[2] In his report the special master noted, "At the time the parties agreed to have me issue this report and recommendation[,] they were aware that I had intended to rely on the hourly rates utilized by the Court in the not yet issued Powell fee orders in my report. At that time, neither party objected." (R.4-131 at 13 n.9.) The plaintiffs' objections quickly arose, however, after the district court decided to set Kleppin's hourly rate at $175 in Powell.

In Powell the plaintiffs sought $481,887 in attorney's fees, and the district

---

[2]The plaintiffs, defendants, counsel for both sides, district judge, magistrate judge, and special master were the same in the present case and in the Powell case.

court awarded plaintiffs $88,623.15 in fees. 547 F. Supp. 2d at 1283. Kleppin sought fees for 1,534.6 hours of work at $270 per hour. Id. at 1284. The district court found that Kleppin's "conduct in this case . . . bears directly on the proper hourly rate and the amount of hours for which he should be compensated." Id. at 1286. The court had this to say about Kleppin:

> Unfortunately, Plaintiffs' counsel was never able to grasp or was unwilling to acknowledge the simple legal nature of this case. . . . Even responding to Defendants' strenuous defense, this case could have and should have been litigated in less than a third of Kleppin's time. The disturbing undercurrent in this case from the outset has been on what will ultimately generate the greatest fees rather than legitimate recovery for Plaintiffs.
>
> Furthermore, Plaintiffs' counsel's lack of understanding of the substantive and evidentiary law, repeated failures to comply with Court directions and rules, as well as their failure to exercise the critically important independent judgment, prolonged the litigation and generated unnecessary work for both counsel and the Court. This fact bears significantly on the appropriate hourly rate and number of hours that the Court can consider as reasonable in light of the nature of the case.

Id.

Specifically, the court criticized Kleppin's "unrealistic and legally unsupportable damage calculations" and pointed out that some of the plaintiffs received less than they would have if they had settled their claims before this lawsuit was filed. Id. at 1286–88. The court took into account what it described as Kleppin's "actions in demanding grossly inflated and totally unsupported damage

9

claims and ignoring settled law. . . ." Id. at 1289. The court explained that it had appointed a special master (the same one as in the present case) to help Kleppin "learn the procedures for preparing for trial, including the organization of relevant evidence and the calculation of damages, and to help him learn to present the legal aspects of the case to a court." Id. at 1290 n.12. The court also criticized Kleppin's motions practice, finding that he "filed multiple motions that often were a waste of time, money and resources." Id. at 1290.

As for Kleppin's hourly rate, the court found that "[b]ased on the quality of the papers filed, the in-court presentations and the repeated lack of familiarity with his evidentiary obligations, Kleppin's performance was more akin to a new associate and the customary rate in the community for all associates is in the range of $150 to $350." Id. at 1294. The court exercised its independent judgment, see Norman, 836 F.2d at 1303, and determined that a rate of $175 was appropriate for Kleppin. 546 F. Supp. 2d at 1294. After hearing oral argument, this Court affirmed the district court's judgment. Powell v. Carey Int'l, Inc., 323 Fed. App'x 829 (11th Cir. Apr. 21, 2009) (unpublished).

Even in the face of the affirmance of the Powell judgment, which included an hourly rate of $175 for Kleppin, the plaintiffs contend that is not a reasonable hourly rate for him. They point out that Kleppin has been awarded higher hourly

10

rates in other cases. They argue that the Powell case is different from the present one, suggesting that the factors leading to a reduced hourly rate in that case do not justify one here.

We disagree. The special master and the district court specifically found that the quality of Kleppin's work product in the present case revealed some of the same deficiencies that the court had also identified in Powell. In determining a reasonable hourly rate, "[a] court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quotation marks omitted). In determining a reasonable hourly rate, a court may assess the skills of the lawyers and the quality of the representation in the case currently before the court. See Turner v. Sec'y of Air Force, 944 F.2d 804, 808–09 (11th Cir. 1991) (affirming district court judgment that took into account counsel's work product, preparation, and general ability when setting an hourly rate). We cannot conclude that the district court clearly erred by finding that the hourly rate it awarded to Kleppin in the Powell case was also an appropriate hourly rate for the present case based on the similarity of his performance in both cases. Cf. Norman, 836 F.2d at 1299 (stating that a reasonable hourly rate may be determined based on

11

"similar services by lawyers of reasonably comparable skills").

2.

The plaintiffs also contend that the district court abused its discretion by reducing Kleppin's number of compensable hours. Their arguments about reduction of time are either conclusory, composed of rhetorical questions, or are otherwise unpersuasive. The district court reduced Kleppin's number of compensable hours based on a detailed chart evaluating precisely which hours were unnecessary, imprecisely logged, excessive, or redundant.

That chart shows that the largest single block of time disallowed is 34.3 hours for work defending against the defendants' counterclaims. (R-4.131 at 11.) The special master concluded that it was "[n]on-compensable work as not related to prosecution of FLSA claims." (Id.) The district court agreed. (R-4.146 at 7.)

The sole basis for the plaintiffs' argument that they should have been compensated for their counsel's work on the counterclaims is rooted in Lawrence v. Credit Thrift of Am., Inc., 622 F.2d 1207 (5th Cir. 1980).[3] There is a problem with their reliance on that decision, which is that the decision was vacated when the case was taken en banc. 628 F.2d 931 (5th Cir. 1980) (en banc). The en banc

_____

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

12

opinion in Lawrence held that the "portion of the opinion of the district court which denies plaintiff recovery of attorney's fees for time spent in defending the compulsory counterclaim is affirmed by an evenly divided court." Lawrence v. Credithrift of Am., Inc., 644 F.2d 506 (5th Cir. 1981). As a result, that part of Lawrence has no precedential value. See Lacy v. Gen. Fin. Corp., 651 F.2d 1026, 1028 (5th Cir. Unit B July 1981) ("An affirmance by an evenly divided court, however, has no precedential value. . . .").

In the Lacy opinion, our predecessor court explained that the Truth in Lending Act permits the award of reasonable attorney's fees if those fees are incurred in order to enforce TILA liability. Id. at 1029. The counterclaim in Lacy, which was for the balance of underlying debt, was related to the TILA claim and was a compulsory counterclaim. Id. at 1027, 1029. The court held, however, that the prevailing plaintiff could not collect attorney's fees incurred in the defense of the counterclaim because it did not arise under TILA. Id. That reasoning applies with equal force to the Fair Labor Standards Act claims in the present case. Furthermore, as the district court recognized, time spent on discrete and unsuccessful claims is not compensable. See Hensley, 461 U.S. at 434–35, 103 S. Ct. at 1940; Norman, 836 F.2d at 1302. Thus, the district court correctly concluded that the time plaintiffs' counsel spent on the counterclaims was not

13

compensable.

D.

The plaintiffs sought $26,605.45 in costs, but the court awarded only $9,342.43. The largest cost item requested, and disallowed, was for payment of $13,133.75 for the services of the special master. The district court's order appointing the special master had authorized him to apportion his costs between the parties. See Fed. R. Civ. P. 53(g) (relating to compensation of a special master and the allocation of payment between the parties). The special master recommended that his costs should be shared equally by the parties, basing that recommendation "on the reasons for [his] appointment, the role that [he] played in the proceedings[,] and [his] observation of the litigation." (R.4-131 at 18.) The district court agreed. (R.4-146 at 9.)

The plaintiffs rely on Carpa, Inc. v. Ward Foods, Inc., 567 F.2d 1316, 1323–24 (5th Cir. 1978), overruled on other grounds by, Copper Liquor, Inc. v. Adolph Coors Co., 701 F.2d 542 (5th Cir. 1983), to argue that special master costs are to be paid to the prevailing party even if, when the master was appointed, the parties agreed to each pay half of the master's costs. See id. ("The trial court also taxed the defendants as costs $3,000 which initially had been assessed against the plaintiffs as their share of the special master's fee. . . . The fact that the trial court

14

appointed the master constitutes a sufficient showing that the master's services were necessary. It was thus within the scope of the trial court's discretion to award as costs to the prevailing party their share of the special master's fee."). But Carpa did not hold that it was mandatory for the district court to award special master costs to the prevailing party, only that it was within the court's discretion to do so. See id. Moreover, Carpa probably did not survive Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S. Ct. 2494 (1987). In Crawford Fitting the Supreme Court limited the taxation of costs to those set forth in 28 U.S.C. §§ 1821 and 1920. See id. at 441–42, 107 S. Ct. at 2497. Neither section permits the taxation of the fees of a special master as costs. See 28 U.S.C. §§ 1821, 1920.

The district court was authorized to split the cost of the special master's services between the parties, see Fed. R. Civ. P. 53(g), and it provided legitimate reasons for doing so. There was no abuse of discretion.[4]

E.

The plaintiffs contend that the district court abused its discretion when it prohibited them from filing as part of the record the transcript of a settlement session with the special master on August 21, 2007. The plaintiffs sought to file

---

[4]The plaintiffs alternatively argue that the special master is really an expert, and therefore his fees are taxable under 28 U.S.C. § 1920(6). We disagree. The special master functioned as a special master, not as a court-appointed expert, and his fees are not taxable as costs. See Crawford Fitting, 482 U.S. at 441–42, 107 S. Ct. at 2497.

that transcript to support their assertion that statements made by the special master during the August 21 session are inconsistent with his later recommendations about attorney's fees. In their reply brief to this Court, the plaintiffs quoted extensively from the parts of the transcript that they believed supported their arguments. Even if we were to consider the excerpts from the transcript that the plaintiffs rely on, we still find their arguments unpersuasive. We are not convinced that the district court abused its discretion by refusing to admit and consider the transcript of the August 21 hearing, and we are convinced that it would have made no difference.[5]

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[5]We deny as moot both the plaintiffs' motion to file with this Court the transcript and a related memorandum and the defendants' motion "to strike (disregard)" the portions of the plaintiffs' reply brief that quote from the transcript.